IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAQUAN WILLIAMS,<br><br>    Plaintiff<br><br>v.<br><br>D. LEE, et al,<br><br>    Defendants | Case No. 1:19-cv-41<br><br>UNITED STATES MAGISTRATE JUDGE<br>RICHARD A. LANZILLO<br><br>MEMORANDUM OPINION AND<br>ORDER ON PLAINTIFF'S TRO MOTION<br>[ECF NO. 7] |

I.    Introduction

Presently pending is Plaintiff Laquan Williams' Motion for Temporary Restraining Order (TRO) and/or Preliminary Injunction. ECF No. 7. In his motion, Williams, an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest), contends that prison officials have retaliated against him for filing lawsuits and grievances in violation of the First Amendment to the United States Constitution. Williams seeks an injunction directing the Pennsylvania Department of Corrections to transfer him to the State Correctional Institution at Greene (SCI-Greene).

By way of background, Williams is incarcerated in the Security Threat Group Management Unit (STGMU), the unit at SCI-Forest that houses and provides services to inmates with affiliations to security threat groups. ECF No. 1-2 ¶ 12; ECF No. 15-1 ¶ 3. The STGMU program includes several "phases" through which an inmate can "progress" over time by exhibiting appropriate behavior. ECF No. 15-2. An inmate who progresses through each of the program's five phases qualifies for release into the prison's general population. *Id*.

1

In the instant motion, Williams contends that his progression through the STGMU program has been impeded by the Defendants' retaliatory conduct. Specifically, he avers that a series of false misconducts filed by the Defendants – each in retaliation for his own protected activity – caused him to remain in Phase 5 and Phase 4 of the STGMU program for longer periods of time than otherwise warranted. ECF No. 1-2 ¶¶ 7-13. He also contends that Defendants have explicitly stated that they will not allow him to progress through the program if he continues to file grievances against staff members. Defendants, in response, maintain that Williams' progression through the STGMU program has been delayed because of his own misbehavior and failure to follow prison rules. ECF No. 15 at 3.

II. Standards

Temporary restraining orders and preliminary injunctions are governed under the same standard. The party seeking preliminary injunctive relief has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) that the issuance of an injunction will not result in greater harm to the non-moving party; and (4) that the public interest would best be served by granting the injunction. *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir. 1997); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191-92 (3d Cir. 1990). The Court should issue the injunction only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. *Opticians*, 920 F.2d at 192 (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according

to the principles of equity. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) (quoting *Frank's GMC Truck Center, Inc. v. General Motor Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The facts clearly must support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied. *United States v. Stazola*, 893 F.2d 34, 37 n. 3 (3d Cir. 1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989); *ECRI*, 809 F.2d at 226 (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages). Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief.

Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are "in court" . . .'". *Stiel v. Fed. Bureau of Prisons*, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting *Muhammad v. Director of Corrections*, 2009 WL 161075, at *1 (E.D. Ca. Jan. 22, 2009)). Thus, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining

the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006); *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

III. Analysis

A. Likelihood of success on the merits

The Court begins its analysis by considering whether Williams has demonstrated a likelihood of success on the merits of his retaliation claim. "Although the plaintiff need not prove their case with airtight certainty, the moving party nevertheless bears a heavy burden on a motion for a preliminary injunction of establishing a reasonable probability of success on the merits." *Burton v. Wetzel*, 2017 WL 4284345, at *8 (M.D. Pa. Sep. 27, 2017) (internal citations, quotations, and additions omitted). This burden if "particularly heavy" where the requested injunction "is directed not merely at preserving the status quo but . . . at providing mandatory relief." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

After carefully reviewing the evidence submitted by the parties, the Court concludes that Williams has not made a sufficient showing to establish a likelihood of success on the merits. In order to prevail on a claim for retaliation, Williams must establish that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and

(3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). In the abstract, Williams' allegation that prison officials issued false disciplinary misconducts in response to his grievances almost certainly suffices to state a claim upon which relief can be granted. However, because "filing false disciplinary charges does not itself violated a prisoner's constitutional rights, so long as procedural due process protections were provided," a retaliation claim based on a false disciplinary charge fails where "there is 'some evidence' to support the discipline citation." *Burton*, 2017 WL 4284345, at *8. *See also Nifas v. Beard*, 374 Fed Appx. 241, 244 (3d Cir. 2010) (noting that an inmate's retaliatory discipline claim "fails [where] there is 'some evidence' supporting the guilty findings"); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of "some evidence" to support a prison disciplinary determination "checkmates" a retaliation claim based on that disciplinary decision). To that end, Defendants have submitted several exhibits, including a declaration from Ryan Swanson, a counselor within the STGMU program, and copies of Williams' misconducts, each of which suggest that Williams may have been issued at least some of his disciplinary misconducts for disobeying orders and refusing to follow rules. *See* ECF No. 15-1 through 15-5.

Without making any ultimate credibility determinations or diminishing the nature of Williams' own factual averments, the Court concludes, in light of the sharply disputed state of the record, that Williams has failed to carry his heavy burden as to this factor. Although his averments suggest a <u>plausible</u> claim for retaliation, they fall short of establishing that success is

sufficiently probable to warrant preliminary injunctive relief. *See Burton*, 2017 WL 4284345, at *9. This factor, therefore, weighs against issuance of a TRO or preliminary injunction.

B. Irreparable harm

Even if Williams could establish a likelihood of success, he must still demonstrate "the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989). As noted above, the burden on a party seeking injunctive relief is "particularly heavy" where the party is seeking to alter (rather than preserve) the status quo. *Punnett*, 621 F.2d at 582. *See also Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997) ("The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits."). Thus, a request for mandatory proactive injunctive relief, such as Williams' demand to be moved into a particular state correctional institution, must be viewed with exacting scrutiny and extreme caution. *Burton*, 2017 WL 4284345, at *6. This is particularly true where, as in the instant case, the "motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in his [complaint]." *Messner v. Bunner*, 2009 WL 1406986, at *5 (W.D. Pa. May 19, 2009).

Williams has failed to meet this exacting burden for several reasons. First, he has failed to demonstrate that the risk of irreparable harm is imminent or immediate. *Synthes, Inc. v. Gregoris*, 228 F.Supp.3d 421, 440 (E.D. Pa. 2017) ("Any irreparable harm must be imminent."); *Burton*, 2017 WL 4284345, at *9 (declining to grant preliminary relief in the absence of evidence "that there is an imminent risk of irreparable injury") (emphasis in original). Rather, the incidents of retaliation cited by Williams in his declaration each occurred in the past. *Boyd v. Larson*, 2017 WL 1904278, at *3 (M.D. Pa. Apr. 21, 2017) ("A preliminary injunction cannot be

issued based on past harm.") (quoting *Fischer v. Goord*, 981 F.Supp. 140, 168 (W.D.N.Y. 1997)).

Secondly, even if Williams' current placement in the STGMU could be viewed as a continuing instance of retaliation,[1] Williams has failed to supply any evidence that his inability to progress through the program represents the type of injury that "cannot be repaired, retrieved, put down again, [or] atoned for" by way of monetary damages. *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). *See also ECRI*, 809 F.2d at 226 (preliminary relief may only issue where the injury is of a "peculiar nature, so that compensation in money cannot atone for it"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (plaintiff must allege an injury that cannot ultimately be "redressed by a legal or an equitable remedy following trial"). To the contrary, the "relief requested" portion of Williams' complaint specifically requests $20.00 in monetary damages for each extra day that he spent in the STGMU because of false misconducts. ECF No. 5 at 12. Williams' request for monetary compensation for his injuries suggests that such damages "may be adequate redress, yet another factor which weighs against extraordinary injunctive relief." *Burton*, 2017 WL 4284345, at *9 (noting that, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate").

For each of the foregoing reasons, the Court concludes that Williams has failed to establish an imminent risk of irreparable injury. This failure is fatal to his motion.

---

[1] The Court notes, parenthetically, that the STGMU is considered to be a non-punitive program. *See Imes v. Wingard*, 2017 WL 1400143, at *2 (W.D. Pa. Feb. 21, 2017) (characterizing the STGMU as a non-punitive "validation process" by which inmates who have poor "prison adjustment, numerous misconducts, and/or known gang affiliations" can attempt to obtain increasing opportunities for "out-of-cell and group activities and privileges").

C. Harm to the non-moving party

With respect to the third factor, "the possibility of harm to the defendants in the event that preliminary relief is erroneously granted" with respect to prison placement "appears to be substantial." *Boyd*, 2017 WL 1904278, at *4 (holding that injunctive relief concerning an inmate's placement "would substantially impair the ability of prison officials to preserve order and maintain security within the prison"). The relief requested – Williams' transfer to a prison of his choice – would require the Court to dictate to prison officials the manner in which a single prisoner (out of thousands in the state penal system) must be treated going forward. This type of relief "would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner," presenting an "even greater harm to the nonmoving party." *Burton*, 2017 WL 4284345, at *11 (quoting *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994)). This factor weighs sharply against injunctive relief.

D. Public interest

The final factor stands in equipoise. While the public has a substantial interest in the protection of First Amendment freedoms, the public also has a substantial interest in maintaining safety and order in correctional facilities. *See, e.g.*, *Burton*, 2017 WL 4284345, at *11 n. 4 (noting that the public has "strongly held interests" in both freedom from retaliation and orderly prisons). Under the facts of this case, neither interest outweighs the other.

E. Summary

As noted above, Williams has failed to demonstrate that he will suffer irreparable harm in the absence of preliminary injunctive relief or that such relief is in the public interest. The Court has further determined that Williams' claims, while potentially viable, cannot be characterized as

"likely to succeed" based on the evidence submitted.  Finally, there is a substantial risk of harm to the Defendants (and non-parties, such as the Department of Corrections) if preliminary relief is granted.  Consequently, Williams has failed to sustain his heavy burden of producing "evidence sufficient to convince the trial judge that all four factors favor preliminary relief." *Opticians*, 920 F.2d at 192 (citing *ECRI*, 809 F.2d at 226).  Williams' motion for TRO and/or preliminary injunction will be denied.

IV. Conclusion

For the reasons set forth above, Williams' Motion for Temporary Restraining Order or Preliminary Injunction [ECF No. 7] is DENIED.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: May 29, 2019